IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RAMONA DANEEN BELL,**           Case No. 1:17 CV 2121

    Plaintiff,

    v.                                 Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                 MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Ramona Daneen Bell ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 15). For the reasons stated below, the undersigned reverses the decision of the Commissioner and remands for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB in August 2012 (Tr. 318), and SSI in September 2012 (Tr. 320), alleging a disability onset date of August 14, 2011. (Tr. 318, 320). Her claims were denied initially and upon reconsideration. (Tr. 217, 236). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 248). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on December 2, 2014. (Tr. 82). On December 29, 2014, the ALJ found Plaintiff not disabled in a written decision. (Tr. 194-206). On May 10, 2016, the Appeals Council granted Plaintiff's request for review and remanded the claim for

additional proceedings. (Tr. 212-14). The ALJ conducted a second hearing on August 31, 2016 (Tr. 47), and on October 3, 2016, again found Plaintiff not disabled in a written decision (Tr. 12-26). The Appeals Council denied Plaintiff's request for review, making the October 2016 hearing decision the final decision of the Commissioner. (Tr. 1-3); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on October 9, 2017. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Plaintiff was born in 1964, making her 47 years old on her alleged onset date, and 52 years old at the October 2016 hearing. *See* Tr. 53. She alleged disability based on bipolar disorder with psychotic features, and asthma. (Tr. 155, 331, 378). Plaintiff had three adult children and lived alone in an apartment. (Tr. 54).

Plaintiff was a licensed STNA[1]. (Tr. 55). She last worked as an STNA in early 2016 though a staffing agency. *Id*. At the time of the hearing, she drove for Uber on the weekends. (Tr. 56). Plaintiff testified she could not work because she suffered from back and knee problems. (Tr. 56-57). She wore a knee brace which sometimes slipped out of place, causing pain. (Tr. 57). She also had difficulty lifting patients due to her knee. *Id*. Further, Plaintiff noted difficulties with asthma, allergies, and bipolar disorder. *Id*.

Plaintiff cleaned but could not do her entire house at one time due to back and knee pain. (Tr. 61). She could only stand for ten to fifteen minutes at a time. (Tr. 62, 65). She would sit on the floors while scrubbing them, and then had difficulty standing up. (Tr. 62). If Plaintiff sat for longer than ten to fifteen minutes, her feet swelled. (Tr. 65). Plaintiff testified that during past work, she argued with staff regarding her need for extra breaks to stand and walk. (Tr. 62-63).

---

1. "State Tested Nurse Aide". *See* www.nursing.ohio.gov/NurseAssist.htm.

Relevant Medical Evidence

Plaintiff went to the emergency room in November 2011 for neck and lower back pain resulting from a car accident. (Tr. 623). On examination, her lungs were clear to auscultation without rales, rhonchi, or wheezes; she had a steady gait and grossly intact motor function. (Tr. 624). X-rays revealed straightening of the lordotic curve, possibly related to her positioning rather than spasm, and mild to moderate disc space narrowing from C4 to C7. (Tr. 617). Plaintiff returned to the emergency room in January 2012, for ongoing back and neck pain. (Tr. 626). Examination revealed tenderness in the trapezius (bilateral) and in the right paraspinal lumbar region. (Tr. 627). Plaintiff had clear lungs with no rhonchi, wheezing, or respiratory distress. *Id*.

In February 2012, Plaintiff saw her primary care nurse practitioner, Belinda Brown, N.P., for persistent back pain. (Tr. 487). On examination, Plaintiff had bilateral lower muscle spasms and tenderness. (Tr. 488). Ms. Brown assessed backache and abdominal pain. *Id*. At a follow-up visit in March, Plaintiff reported pain in her neck and arms. (Tr. 494). Ms. Brown referred her for physical therapy. *Id*.

In July 2012, Plaintiff saw nurse practitioner Kimberly Foley, C.N.P., for lower back and shoulder pain. (Tr. 499). On examination, Plaintiff had tenderness in the thoracic area with limited range of motion. (Tr. 499-500). Plaintiff was again referred for physical therapy but declined due to financial concerns. (Tr. 500). Plaintiff returned to Ms. Foley in August for prescription refills related to her back pain. (Tr. 503). On examination, her lungs were clear, but she had limited range of motion in her back and hips. (Tr. 504). She reported back pain at a level of 2/10, which sometimes increased to 10/10. *Id*.

In November 2012, Plaintiff underwent a consultative physical evaluation with Dorothy Bradford, M.D. (Tr. 565-72). On examination, Plaintiff had normal strength and function in her

hips and in all extremities. (Tr. 565). She had normal range of motion in all major joints, including her neck and spine. (Tr. 565-68, 571). Her respiratory effort was normal, with clear lungs. (Tr. 570). Dr. Bradford assessed mild, well-controlled asthma and back pain that "sounds like muscle spasms controlled with medication". (Tr. 572).

Plaintiff presented to Michael Faust, Ph.D., for a consultative psychological evaluation in November 2012. (Tr. 555-62). She reported symptoms of depression including: "an overall sad and depressed mood", suicidal thoughts, and insomnia. (Tr. 557). She reported difficulties with concentration and memory. *Id*. Plaintiff reported that she spent "a lot" of time with her grandchildren, her son took her grocery shopping, and she did her own cooking and cleaning. (Tr. 560). On examination, Plaintiff was anxious and depressed, had a constricted range of emotions, and a blunted affect. (Tr. 599). Dr. Faust diagnosed bipolar disorder. (Tr. 560).

Plaintiff saw Ms. Foley in January 2013 after falling down two stairs, striking her right shoulder and knee. (Tr. 629). Examination revealed a limited range of motion in the right shoulder with tenderness and swelling. (Tr. 630). Ms. Foley noted Plaintiff "using [her] arm when [she was] not aware of provider watching". *Id*. Ms. Foley prescribed ibuprofen and referred Plaintiff for an x-ray. *Id*.

In April 2013, Plaintiff sought treatment at the emergency room for knee pain after again falling down a few stairs two days prior. (Tr. 600). On examination, Plaintiff had an "obvious effusion" of the right knee with anterior pain. (Tr. 601). The provider noted Plaintiff had clear lungs. *Id*. Plaintiff was diagnosed with an acute right knee sprain with internal derangement and given a splint. (Tr. 602).

In June 2013, Plaintiff saw Todd Wagner, M.D., for low back pain. (Tr. 676). Examination revealed good range of motion in her back with no focal tenderness or spasms. *Id*. In September,

4

Plaintiff returned to Dr. Wagner for right shoulder, right knee, and lumbar pain. (Tr. 673). On examination, Plaintiff had supraspinatus dysfunction with subacromial impingement or musculotendinous lesions. (Tr. 674). Dr. Wagner noted Plaintiff might have some osteoarthritic changes in her lumbar spine. *Id*. He recommended physical therapy when Plaintiff's insurance status improved. *Id*.

Plaintiff attended two physical therapy sessions in April 2014 for her shoulder. (Tr. 662, 666). She returned to Dr. Wagner later that month, and reported physical therapy helped her shoulder pain. (Tr. 664).

Plaintiff attended physical therapy for right shoulder pain again from October 2014 through March 2015. (Tr. 736-39, 842-44). Physical therapy for her right knee was incorporated in December 2014 and continued through to March 2015. (Tr. 724-27, 734-35). She was discharged from therapy in March 2015 after meeting all her goals. (Tr. 735).

In a third-party function report dated August 2016, Plaintiff's daughter, Chiquita Bell, reported spending time with her "almost every day". (Tr. 413). Ms. Bell noted, though she was "up and down" at times (Tr. 417), Plaintiff watched and played with her grandchildren "regularly" (Tr. 414, 417), cleaned "all the time" (Tr. 415), and shopped for her own food, clothing, and household items (Tr. 416). Ms. Bell noted Plaintiff's activity level was dependent upon her mood. (Tr. 414). She further stated Plaintiff has been in this state throughout her life, but found her condition worsened as she got older. (Tr. 414).

Opinion Evidence

*Treating Physicians*

Dr. Wagner completed a medical source statement in November 2014. (Tr. 710). He opined Plaintiff could sit for fifteen minutes and stand for twenty minutes at one time. (Tr. 711). Dr.

5

Wagner found Plaintiff needed to shift positions at will, needed to walk for ten minutes every twenty minutes, required unscheduled breaks, and could rarely[2] lift less than ten pounds. (Tr. 711-12). Plaintiff could sit, stand, or walk for less than two hours of an eight-hour workday. (Tr. 711). Dr. Wagner opined Plaintiff could rarely stoop; occasionally[3] twist and climb stairs; and never crouch, squat, or climb ladders. *Id*. He found she was capable of "moderate stress - normal work" because she was successful with her course load at school. (Tr. 713). Plaintiff needed to avoid any work environment that worsened her allergies or asthma. *Id*.

In March 2016, Plaintiff saw nurse practitioner Jessica McCullough, N.P., for an employment physical. (Tr. 1309). Plaintiff reported bilateral leg swelling, and Ms. McCullough noted 1+ general swelling of the lower legs and ankles on examination. (Tr. 1307). Ms. McCullough found Plaintiff's breathing unlabored and her lungs clear. (Tr. 1312). She had normal gait and sensation, and 4/5 strength bilaterally. *Id*. Ms. McCullough cleared Plaintiff to "work without restrictions" but advised the position should not require lifting. *Id*.

In August 2016, Ms. McCullough completed a physical medical source statement. (Tr. 1479). In it, she noted she began treating Plaintiff in November 2015. *Id*. She opined Plaintiff could "occasionally"[4] lift/carry ten pounds. (Tr. 1481). She could sit six hours and stand/walk two hours with a sit-stand "at will" option. (Tr. 1480-81). She could "rarely"[5] stoop, bend, crouch, or climb ladders and stairs. (Tr. 1481). Ms. McCullough opined Plaintiff would be absent four or more days per month and would be "off task" approximately ten percent of the time. (Tr. 1482).

---

2. The form defined "rarely" as "1% to 5% of an 8-hour working day". (Tr. 712).

3. The form defined "occasionally" as "6% to 33% of an 8-hour working day". *Id*.

4. The form defined "occasionally" as "6% to 33% of an 8-hour working day". (Tr. 1481).

5. The form defined "rarely" as "1% to 5% of an 8-hour working day". *Id*.

6

*Examining Physician*

In November 2012, consultative examiner Dr. Bradford found Plaintiff's examination was "normal" and opined Plaintiff had "no activity restrictions" (Tr. 572).

*Reviewing Physicians*

In November 2012, State agency physician Leon Hughes, M.D., reviewed Plaintiff's medical records and provided a physical residual functional capacity assessment. (Tr. 133). He opined Plaintiff had no exertional, postural, manipulative, visual, or communicative limitations; but that she needed to "avoid all exposure" to fumes, odors, dusts, gasses, and poor ventilation due to asthma. (Tr. 133-34).

In June 2013, State agency physician Frank Stroebel, M.D., reviewed Plaintiff's medical records and provided a physical residual functional capacity assessment. (Tr. 165). He opined Plaintiff could occasionally lift or carry 50 pounds and frequently lift or carry 25 pounds. *Id*. She could stand or walk for a total of six hours in an eight-hour workday. *Id*. She could frequently stoop, and occasionally climb ramps/stairs, crouch, and crawl. (Tr. 166). Plaintiff could never climb ladders, ropes, or scaffolds. *Id*. Dr. Stroebel also opined Plaintiff needed to "avoid all exposure" to fumes, odors, gasses due to asthma, and hazards such as machinery or heights. *Id*.

<u>VE Testimony</u>

A VE appeared and testified at the hearing before the ALJ. *See* Tr. 67-78. The ALJ asked the VE to consider a person with Plaintiff's age, education, and vocational background who was physically and mentally limited in the way in which the ALJ determined Plaintiff to be. (Tr. 71-

73). The VE opined such an individual could not perform Plaintiff's past work, but could perform other jobs such as document specialist, addresser, or surveillance system monitor. (Tr. 74).

ALJ Decision

In a written decision dated October 2016, the ALJ found Plaintiff met the insured status requirements for DIB through June 30, 2012. (Tr. 14). He found Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 15). He concluded Plaintiff had severe impairments of: asthma, lumbosacral strain, cervical strain, osteoarthritis of the knee, depression, and anxiety; but also found none of these impairments (alone or in combination) met or medically equaled the severity of a listed impairment. *Id*. The ALJ then set forth Plaintiff's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant can occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds; she can frequently stoop and occasionally kneel, crouch, or crawl; she must avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation and must avoid all exposure to hazards such as unprotected heights, moving machinery, and commercial driving; the claimant can perform simple tasks in a setting with supervisor redirection one to two times per day and with occasional changes that are easily explained; she can perform goal-oriented work but not at a production rate pace; she can interact with supervisors and co-workers if that interaction is limited to speaking and signaling as it is defined in the Selected Characteristics of Occupations (SCO), a companion volume to the Dictionary of Occupational Titles; the claimant cannot interact with the public.

(Tr. 18). The ALJ found Plaintiff was unable to perform past relevant work; was an individual closely approaching advanced age at the time of the decision; and had a high school education. (Tr. 24). The ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 25). Thus, the ALJ found Plaintiff not disabled from August 14, 2011 (the alleged onset date), through the date of his decision. *Id*.

8

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred in three ways: (1) by failing to properly evaluate the opinions of the State agency physicians; (2) by failing to account for all her work-related limitations in the RFC; and (3) by failing to provide "good reasons" for discounting the opinions of her treating providers. (Doc. 13, at 8-16). The Commissioner responds that the ALJ's decision is supported by substantial evidence. (Doc. 17, at 11-18). For the reasons discussed below, the undersigned reverses the decision of the Commissioner and remands the case for further proceedings.

*State Agency Physicians and the RFC*

Plaintiff first argues the ALJ erred in failing to reference or evaluate the opinion of the non-examining State agency physician, Dr. Hughes. Specifically, Plaintiff argues the ALJ failed to consider Dr. Hughes's opinion that Plaintiff must "avoid all exposure" to fumes, odors, dusts, gases, and other pulmonary irritants due to asthma. (Doc. 13, at 8). Thus, she contends, the RFC is also unsupported because the ALJ's RFC prohibited "concentrated exposure" to fumes, as opposed to "all exposure". *Id*. at 10.

As an initial matter, the opinion of a non-examining State agency physician is not weighted the same as a treating physician. Under the regulations, there exists a hierarchy of medical opinions: first, is the treating source (as discussed above); second, is the non-treating source, one who has examined but not treated the plaintiff; and lastly, is a non-examining source, one who renders an opinion based on a review of the medical record as a whole. 20 C.F.R. §§ 404.1502, 416.902. An ALJ must provide "good reasons" for the weight given to a treating source, *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 391 (6th Cir. 2004), but not for a non-treating or non-examining source, *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (holding "the SSA requires ALJs to give reasons for only *treating* source" opinions) (emphasis in original); *Murray v. Comm'r of Soc. Sec.*, 2013 WL 5428734, at *4 (N.D. Ohio) ("Notably, the procedural 'good reasons' requirement does not apply to non-treating physicians."). "Under certain circumstances, an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating or examining source." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (citing SSR 96–6p, 1996 WL 374180, at *2–3). This is because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the

evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180, at *2–3.

> The ALJ set forth his assessment of one State agency consultant's opinion:
>
> The undersigned gives partial weight to the State agency medical consultant at the reconsideration level (ex[]. 5A). In accordance with the Social Security Ruling 96-6p, the undersigned has considered the administrative findings of fact made by the State agency medical consultant but gives partial weight because they are from a non-treating or non-examining source.

(Tr. 22).

Here, the ALJ expressly considered the opinion of the State agency physician at the redetermination level (Dr. Stroebel). *Id*. Importantly, Dr. Stroebel offered an identical opinion of Plaintiff's environmental limitations as that offered by Dr. Hughes at the initial level: Plaintiff must avoid "all exposure" to fumes, odors, dusts, gases, poor ventilation, due to her asthma. *Compare* Tr. 134, *with* Tr. 166. Thus, the fact that the ALJ did not expressly mention Dr. Hughes by name is no more than harmless error because he considered the at-issue limitation. *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009). Remanding on this point would be "'an idle and useless formality'". *Id.* (quoting *N.L.R.B. v. Wyman-Gordan Co.*, 394 U.S. 759, 766 n.6 (1969)). However, the ALJ's lack of explanation for discounting the identical opinion from Dr. Stroebel is error – reversible error.

When evaluating any medical source, an ALJ must weigh the opinion based on certain factors. *Rabbers*, 582 F.3d at 660 (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*. Although the ALJ is not required to address each factor, or explicitly provide good reasons (as he is for treating physicians), the

ALJ's decision must say enough "to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011).

Additionally, where a medical source's opinion contradicts the ALJ's RFC finding, an ALJ must explain why he did not include the medical source's limitation in his determination of the claimant's RFC. *See* SSR 96-8p, 1996 WL 374184, at *7. Social Security Ruling 96-8p provides: "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* Courts in the Northern District of Ohio have held that an ALJ's failure to comply with this regulation requires reversal. *See Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (ALJ's failure to address a medical source's opinion which conflicted with RFC constituted reversible error); *see also Thompson v. Comm'r of Soc. Sec. Admin*, 2014 WL 356974, at *4 (N.D. Ohio) (same); *Moretti v. Colvin*, 2014 WL 37750, at *10 (N.D. Ohio) (same).

Here, as Plaintiff emphasizes, the State agency physicians opined Plaintiff must "avoid all exposure" to fumes, odors, dusts, gases, and other pulmonary irritants due to asthma (Tr. 166), while the ALJ limited her to avoiding only "concentrated exposure" (Tr. 18). (Doc. 13, at 8, 10). The ALJ's only explanation as to why he chose not to adopt the State agency physician's opinion was his status as a State agency physician. (Tr. 22). As noted above, though the ALJ does not need to discuss all the factors he used to weigh an opinion, he must still consider them. *Rabbers*, 582 F.3d at 660 (citing 20 C.F.R. § 404.1527(d)(2)). And his explanation must be clear enough for this Court to "trace the path of his reasoning". *Stacey*, 451 F. App'x at 519. Here, with no other explanation for discounting the opinion of the State agency physician – other than assigning "partial weight" due to his status as a State agency physician – it is impossible for the undersigned

13

"to trace the path of his reasoning," and determine how the ALJ evaluated the opinion in formulating the RFC. *Id.*

Further, as noted above, where "the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. Here, the ALJ created an RFC which prohibits "concentrated exposure" to fumes, whereas the State agency physicians found Plaintiff must "avoid all exposure" to fumes, odors, dusts, gases, and other pulmonary irritants due to asthma. (Tr. 18, 166). The ALJ did not explain why he did not adopt Dr. Stroebel's limitation in this regard other than to say he gave the opinion partial weight due to Dr. Stroebel's non-examining status. Thus, remand is required for the Commissioner to address the opinions of the State agency physicians, specifically, why the RFC diverges from the physicians' opinion regarding Plaintiff's exposure to pulmonary irritants.

*Treating Sources*[6]

Plaintiff next argues the ALJ failed to properly evaluate the opinions of treating providers Dr. Wagner and Nurse McCullough. (Doc. 13, at 11). Specifically, Plaintiff argues their opinions established greater exertional limitations than found by the ALJ. *Id.* The Commissioner responds that the ALJ's decision is supported by substantial evidence. (Doc. 17, at 18). For the reasons

---

6. "Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

discussed below, remand is required to address the treating sources' opinions regarding Plaintiff's ability to stoop.

*Dr. Wagner*

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians.[7] *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96–2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242.

A treating physician's opinion is given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson,* 378 F.3d at 544.

When determining weight and articulating "good reasons", the ALJ "must apply certain factors" to the opinion. *Rabbers*, 582 F.3d at 660 (citing 20 C.F.R. § 404.1527(d)(2)). These factors

---

7. Although recent revisions to the CFR have changed the rules regarding evaluation of treating physician opinions, such changes apply to claims filed after March 27, 2017, and do not apply to claims filed prior to that date. *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5852-53, 2017 WL 168819.

15

include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, he is not required to enter into an in-depth or "exhaustive factor-by-factor analysis" to satisfy the requirement. *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

The ALJ expressly recognized Dr. Wagner as a treating physician. (Tr. 22). He then summarized Dr. Wagner's opinion and gave reasons for the weight assigned:

> The undersigned declines to accord controlling weight to the November 26, 2014 opinion of treating physician Dr. Wagner at Exhibit 21F. The undersigned specifically accords the opinion partial weight. Dr. Wagner provided an opinion, however, he also included a statement that he deferred to "PT/psych" with respect to the claimant's functional limitations in a competitive work setting. His opinion that the claimant can sit, or stand/walk less than two hours each and that she must walk after 15-20 minutes is not consistent with the claimant's own statements regarding her ability to perform work as a driver, and her abilities to perform activities of daily living. Furthermore, Dr. Wagner's limitation of no more than rarely stooping is inconsistent with "rarely" defined as less than 5% of a workday, [and] is inconsistent with Dr. Wagner's opinion that the claimant could sit, stand/walk up to two hours with alternating positions, as the ability to stoop is inherent in her ability to sit. The undersigned considers Dr. Wagner's assessment that the claimant is capable of moderate stress work and that she must avoid a work environment that worsens allergies/asthma to be consistent with the record.

(Tr. 22-23).

Here, the ALJ rejected Dr. Wagner's limitations regarding sitting, standing, and walking because they were not consistent with Plaintiff's statements regarding her ability to work as an Uber driver and perform activities of daily living. *Id*. For the reasons discussed below, the undersigned finds this reasoning supported by substantial evidence, however, the ALJ's rejection of Dr. Wagner's stooping limitation is not.

16

First, Dr. Wagner opined Plaintiff could not sit for more than fifteen minutes without needing to stand, nor stand for more than twenty without needing to sit. (Tr. 711). He further indicated Plaintiff was only capable of sitting, standing, or walking less than two hours of an eight-hour workday. *Id*. Dr. Wagner also found Plaintiff needed to get up and walk for ten minutes, every twenty minutes, during an eight-hour workday. (Tr. 711). The ALJ chose not to adopt Dr. Wagner's limitations here because they were not consistent with Plaintiff's statements regarding her Uber job, and her ability to perform activities of daily living. (Tr. 23). These reasons are supported by substantial evidence.

Here, the ALJ pointed out these limitations are not consistent with Plaintiff's testimony that she drove for Uber on the weekends (Tr. 56) – a job which logically requires sitting for longer than fifteen minutes at a time (Tr. 23). Further, the ALJ found Dr. Wagner's limitations regarding Plaintiff's inability to sit for more than fifteen minutes without needing to stand or standing for more than twenty without needing to sit (Tr. 711), were inconsistent with Plaintiff's ability to perform activities of daily living (Tr. 22-23). Throughout the course of treatment, Plaintiff made several statements regarding her abilities in this area. For example, at a May 2014 visit with Dr. Wagner himself, Plaintiff noted that she recently completed her STNA certification and was looking for work in this capacity. (Tr. 660). In June 2014, she reported to providers at the Murtis Taylor Center that she was studying for (and eventually passed) her STNA board certification. (Tr. 692, 695). During her November 2012 consultative examination, Plaintiff reported that she spent "a lot" of time with her grandchildren, her son took her grocery shopping, and she did her own cooking and cleaning. (Tr. 560) ("I clean a lot and like everything to be neat[.]"). In a third-party function report dated August 2016, Plaintiff's daughter reported, though she was "up and down" at times (Tr. 417), Plaintiff watched and played with her grandchildren "regularly" (Tr. 414, 417),

17

cleaned "all the time" (Tr. 415), and shopped for her own food, clothing, and household items (Tr. 416). As noted above, where an ALJ addresses the consistency of the treating physician's opinion with the record, and supportability of that opinion by the physician's own treatment notes, he has provided "good reasons" to not assign controlling weight to the provider. *See Rabbers*, 582 F.3d at 660 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Rogers,* 486 F.3d at 242 (holding a treating physician's opinion is only given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record.) (citing *Wilson,* 378 F.3d at 544).

Unsupported, however, is the ALJ's rejection of Dr. Wagner's and Nurse McCullough's (discussed below) stooping limitation. Plaintiff argues (Doc. 13, at 13), and the Commissioner concedes (Doc. 17, at 18), that the ALJ's rejection of Dr. Wagner's stooping opinion by finding it necessarily inconsistent with the ability to sit was incorrect. The ALJ rejected Dr. Wagner's stooping limitation on the basis that Dr. Wagner's opinion also found Plaintiff could sit/stand/walk up to two hours, and "stooping is inherent in the ability to sit". (Tr. 23). The regulations define "stooping" as "bending the body downward and forward by bending the spine at the waist", SSR 83-14, 1983 WL 31254, at *2, and the ALJ's explanation that "stooping is inherent in the ability to sit" is a lay opinion that belongs to the ALJ alone (Tr. 22). *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) ("the ALJ may not 'substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.'") (*quoting Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir.2006)). Because this unsupported reason is the only reason given for rejecting Dr. Wagner's stooping opinion, this error cannot be harmless as the Commissioner argues, and remand is necessary. (Doc. 17, at 18). On remand, the Commissioner should explain the inconsistency between the RFC and the stooping

restrictions of both treating providers, Dr. Wagner and Ms. McCullough (discussed below). *See* Tr. 712, 1481; *see also* SSR 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

*Nurse McCullough*

Plaintiff also argues Ms. McCullough's opinion was also improperly rejected by the ALJ. (Doc. 13, at 11). The undersigned notes Ms. McCullough is not an acceptable medical source under the regulations. *See* 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2)("acceptable medical source" includes "licensed physicians" and "licensed or certified psychologists."). Evidence from those who are "not acceptable medical sources" or "other sources", including nurse practitioners, "are important and should be evaluated with key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *2. Interpreting SSR 06-03p, the Sixth Circuit found that "[o]pinions from non-medical sources who have seen the [Plaintiff] in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion in with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

The ALJ summarized Ms. McCullough's opinion and gave reasons for the weight assigned:

> Ms. McCullough's opinion regarding the claimant's need to alternate positions would appear to be internally inconsistent with her opinion that the claimant can rarely stoop. Stooping is necessary for the ability to sit. Therefore, Ms. McCullough's own treatment records and the statements of the claimant do not support the limitations assessed by Ms. McCullough. The undersigned accords Ms. McCullough's opinion partial weight to the extent it has probative value in finding the claimant does experience limitations in function that affect her ability to perform functional activities, but otherwise finds the opinion not consistent with the record as a whole.

(Tr. 23).

Again, as discussed above, rejecting a stooping limitation because "[s]tooping is necessary for the ability to sit" (Tr. 23) is unsupported. Because remand is required for the Commissioner to reconsider the opinion of Dr. Wagner on this issue, the Commissioner should also reconsider Ms. McCullough's opinion.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI not supported by substantial evidence and reverses and remands that decision for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

      s/James R. Knepp II
United States Magistrate Judge